# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD J. MENKES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 04-1456 (RJL) |
| | ) |
| DEP'T OF HOMELAND SEC., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION
(September 28, 2005) [#4]

Plaintiff, Richard Menkes, has brought the instant action against the defendants, the United States Department of Homeland Security, the United States Coast Guard and Assistant Commandant T.H. Gilmour, seeking an order reinstating his status as an "independent pilot" in District One for current and future navigation seasons. Presently before the Court is defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) or, in the alternative, for summary judgment. Upon due consideration of the parties' submissions, the relevant law, and the entire record herein, the Court GRANTS the defendants' motion.

### FACTUAL BACKGROUND

The current system of pilotage in the Great Lakes and St. Lawrence Seaway area is regulated by the Great Lakes Pilotage Act of 1960, codified at 46 U.S.C. Chapter 93 (2000). *See* 46 C.F.R. Chapter III, Parts 401-04 (2005) (setting forth the statute's



1

implementing regulations).[1]   Plaintiff, Captain Richard Menkes, was licensed and registered by the U.S. Coast Guard as a pilot in District One, which encompasses the Great Lakes and St. Lawrence Seaway. Pl.'s Compl. at 1. The plaintiff was a member of the St. Lawrence Seaway Pilots' Association ("SLSPA") and of their authorized pilotage pool in District One until he resigned from the association in December 2000. Pl.'s Compl. at 4 (citing A.R. at 3). The defendants, U.S. Department of Homeland Security ("Homeland Security") and U.S. Coast Guard ("Coast Guard"), are the federal agencies that regulate the pilotage services in District One. Pl.'s Compl. at 2. Defendant Assistant Commandant T.H. Gilmour is the officer responsible for the administration of the Coast Guard's Great Lakes Pilotage program and procedures. Pl.'s Compl. at 2.

In July 2000, the plaintiff informed the Director of Great Lakes Pilotage for the Coast Guard ("the Director") that he wanted to provide independent pilot services in District One, even though he was no longer a member of the SLSPA. Defs.'s Mot. to Dismiss at 4 (citing A.R. at 70). On February 26, 2001, the Director dispatched plaintiff to provide pilotage services in District One during the 2001 navigation season and informed plaintiff that his resignation from the SLSPA had no effect on his status as a registered pilot. Defs.'s Mot. to Dismiss at 4 (citing A.R. at 77). The Director additionally notified the SLSPA of plaintiff's status for the 2001 navigation season and

---

[1]     By way of overview, Congress delegated to the Director of Great Lakes Pilotage the authority to "authorize the formation of a pool by voluntary association of U.S. registered pilots to provide for the efficient dispatching of vessels and rendering of pilotage services." 46 U.S.C. § 9304. The Director, pursuant to this authority, authorized the formation of a pool in District One and approved the SLSPA's application to run the pool. 46 C.F.R. §§ 401.300(a)(1), 402,320(a)(1). However, when the authorized pilotage pool is not providing adequate service because of physical or economic inability, the Director has the discretion and authority to order any U.S. registered pilot to provide pilotage service. 46 C.F.R. § 401.720(b).

cited his authority under 46 C.F.R. § 401.720[2] to dispatch the plaintiff in instances when the SLSPA was not providing adequate pilotage service. Defs.'s Mot. to Dismiss at 4 (citing A.R. at 63-64).

Dissatisfied with the prospect of an independent pilot working in District One, the SLSPA appealed the Director's decision to his supervisor, the Director of Waterways Management for the Coast Guard. Defs.'s Mot. to Dismiss at 4 (citing A.R. at 57, 60-62). On May 22, 2001, the Director of Waterways Management upheld the Director's decision and authority to dispatch the plaintiff until such time as the SLSPA was able to restore safe and efficient pilotage service. Defs.'s Mot. to Dismiss at 4 (citing A.R. at 57-59).

The plaintiff remained as an independent pilot through the 2003 navigation season, at which time it naturally expired and the Director informed the SLSPA and the plaintiff that his status would not continue for the 2004 season. Defs.'s Mot. to Dismiss at 4 (citing A.R. 9-10). On January 22, 2004, the Director clarified that the plaintiff's previous status as an independent pilot was not a "permanent circumstance" but that it was "predicated" upon his "determination" that the SLSPA could not provide adequate pilotage service at that time. Pl.'s Compl. at 9 (citing A.R. 6).

On January 28, 2004, the plaintiff timely appealed the Director's decision that the determination to dispatch plaintiff as a pilot in District One during the 2003 season would expire at the end of the 2003 navigation season. Plaintiff argued that the SLSPA could not compel the plaintiff's participation in their association and that the regulations do not

---

[2]     This regulation states, in pertinent part, that "[w]hen pilotage service is not provided by the association authorized under 46 U.S.C. 216b(e) because of a physical or economic inability to do so, or when the Certificate of Authorization is under suspension or revocation under § 401.335, the Director may order any U.S. registered pilot to provide pilotage service." 46 C.F.R. § 401.720(b).

3

allow the Coast Guard to show "employment preference" for registered pilots in associations. Pl.'s Compl. at 7 (citing A.R. 3-5).

On April 12, 2004, Rear Admiral T.H. Gilmour, Assistant Commandant for Marine Safety, Security and Environmental Protection, upheld the Director's decision. Defs.'s Mot. to Dismiss at 5 (citing A.R. 1-2).   He reiterated that only under "extraordinary circumstances" (e.g., when a pool, like the SLSPA, is not providing pilotage services), will the Director take action to order any U.S. registered pilot to provide pilotage services. Defs.'s Mot. to Dismiss at 5 (citing A.R. 1-2).  The Assistant Commandant further stated that he would continue to monitor the circumstances to determine if independent pilotage services would be required for the 2004 season. Defs.'s Mot. to Dismiss at 5 (citing A.R. 1-2).  Plaintiff filed the instant complaint against the defendants on August 26, 2004, seeking an order reinstating his status as an "independent pilot" in District One for current and future navigation seasons.  Pl.'s Compl. ¶ 63.  Defendants have moved to dismiss or, in the alternative, for summary judgment.

## STANDARD OF REVIEW

To survive a Federal Rule 12(b)(1) motion to dismiss, the plaintiff must establish the existence of subject matter jurisdiction by a preponderance of the evidence. *Thompson v. Capitol Police Bd.*, 120 F. Supp. 2d 78, 81 (D.D.C. 2000).  When a motion to dismiss presents a dispute over the factual basis of the Court's subject matter jurisdiction, the Court "must go beyond the pleadings and resolve any disputed issues of

fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).

If the Court has subject matter jurisdiction over a claim, it must then determine whether the plaintiff has alleged sufficient facts in it complaint to state a cause of action to survive a Rule 12(b)(6) dismissal. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court will accept as true all of the well-pleaded factual allegations set forth in the complaint. *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985). The complaint is construed liberally in favor of the plaintiff. *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). However, the Court "need not accept inferences drawn by [the] plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint [ n]or must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The Court will only dismiss a complaint if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46; *Kowal*, 16 F.3d at 1276 (D.C. Cir. 1994).

## THE GREAT LAKES PILOTAGE ACT

The fundamental issue presented by this motion is whether the Court has jurisdiction to hear the claims brought by the plaintiff under the Great Lakes Pilotage Act. The defendants argue that jurisdiction in this Court is improper because, *inter alia*, the decision of the Director is agency action and, under the Administrative Procedure Act ("APA"), the Coast Guard's actions are matters "committed to agency discretion by law"

for which there are no "judicially manageable" standards. Defs.'s Mot. to Dismiss at 8-
10. For the following reasons, the Court agrees.

Under the APA, there is a strong presumption of reviewability of agency action.
*Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003) (citing *Abbott Labs. v. Gardner*,
387 U.S. 136, 140 (1967)). The APA, however, only outlines procedure and does not,
itself, confer jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 105-106 (1977). In this
regard, judicial review of agency action under the APA is available where it is: 1) "made
reviewable by statute" or 2) "final agency action for which there is no adequate remedy in
a court." 5 U.S.C. § 704 (2000). In the final analysis, however, review is not available if
a statute precludes judicial review or the agency action "is committed to agency
discretion by law." 5 U.S.C. §§ 701(a), 702, 704 (2000).

In this case, Congress has not indicated an express intent to preclude judicial
review of the defendants' actions. *See generally* 46 U.S.C. Ch. 93 (2000); 46 C.F.R.
Chapter III, Parts 401, 402, 403 and 404 (2005); *see also Heckler v. Chaney*, 470 U.S.
821, 830 (1987) ("[§ 701(a)(1)] applies when Congress has expressed an intent to
preclude judicial review" and is the first "hurdle" a party must clear). Hence, in the
absence of such congressional preclusion, the narrow issue arises as to whether the Coast
Guard's actions are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2);
*Heckler*, 470 U.S. at 830. Such is the case when "a court would have no meaningful
standard against which to judge the agency's exercise of discretion" and, thus, the
pertinent statute can be interpreted to have "committed the decisionmaking to the
agency's judgment *absolutely*." *Id.* (emphasis added). Indeed, if no "judicially

6

manageable standard" exists for the Court to judge the agency's action, meaningful judicial review is impossible and the Court is without jurisdiction. *Steenholdt*, 314 F.3d at 638 (citing *Heckler*, 470 U.S. at 830).

As noted previously, the current system of pilotage in the Great Lakes and St. Lawrence Seaway area is regulated by the Great Lakes Pilotage Act of 1960. 46 U.S.C. Ch. 93. The Coast Guard prescribes standards for Great Lakes pilots and registers those who meet the statutory requirements for service. 46 U.S.C. § 9303 (2000). The Secretary of Commerce may authorize the formation of a pilotage pool by a voluntary association of U.S. registered pilots to ensure the "efficient dispatching of vessels and rendering of pilotage services." 46 U.S.C. § 9304(a) (2000). When the authorized pilotage pool is not providing adequate pilotage service because of physical or economic inability, the Director of Great Lakes Pilotage may order any U.S. registered pilot to provide pilotage service. 46 C.F.R. § 401.720(b) (2005).

Indeed, the express language of the statute itself grants *the Director* the authority and discretion to determine if and when the authorized pilotage pool is not providing adequate and efficient pilotage services and, by extension, if and when outside help in the form of independent U.S. registered pilots is required to fill in the gaps. 46 U.S.C. §§ 9304, 9306; 46 C.F.R. §§ 401.300(a)(1), 401.720(b), 402.320(a)(1). There is no delineated "judicially manageable" standard for this Court to follow, however, in determining whether additional pilots are needed on the seaway or if the existing pilotage

pool is performing as expected.[3]  This determination has been left to the discretion of the

Director of Great Lakes Pilotage, who is charged with maintaining the safe and efficient

operation of an international seaway that carries a high volume of commercial traffic.[4]

Moreover, the nature of the administrative action at issue (i.e., the determination of

what constitutes adequate and efficient pilotage service) and the structure of the statute

itself (i.e., giving the Director discretion to authorize when independent pilots are

necessary) support the conclusion that this matter has been committed solely to agency

discretion.  *See Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002); *see also Webster v. Doe*,

486 U.S. 592, 600 (1988) (holding that the phrase "whenever the Director shall deem

such termination necessary or advisable in the interests of the United States" in the

National Security Act demonstrated deference to the Director and suggested action was

committed to agency discretion by law).  In sum, given the nature of the expertise needed

to make the determination of whether or not independent pilots are needed, the lack of

"judicially manageable" standards, and the deference accorded the agency's own

interpretation, the decision in question here is a matter "committed to agency discretion

by law."  Accordingly, plaintiff's Great Lakes Pilotage Act claims are not properly before

this Court and are dismissed.

---

[3]     *See, e.g., Steenholdt*, 314 F.3d at 638 (holding there was no judicially manageable standard to judge agency action when the Federal Aviation Act "empower[ed] the Administrator . . . to rescind a [ ] designation 'at any time for any reason the Administrator consider[ed] appropriate'").  *Cf. Arent v. Shalala*, 70 F.3d 610, 614 (D.C. Cir. 1995) (holding that "Congress provided meaningful standards against which to judge the Food and Drug Administration's exercise of discretion" in the Nutrition Labeling and Education Act by including detailed definitions with carved out exceptions and factors to be considered in the statute itself).

[4]     Moreover, that the statutory scheme bestows authority upon the Director is buttressed by the fact that these determinations may involve a "complicated balancing of a number of factors which are peculiarly within [the agency's] expertise." *Heckler*, 470 U.S. at 831-32 (holding that the FDA's refusal to take enforcement action regarding certain drugs was judicially unreviewable because the agency was "far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities").

## CONSTITUTIONAL CLAIMS

Finally, the plaintiff argues that his First Amendment right to freedom of association and his Fifth Amendment Due Process rights have been violated.[5]  For the following reasons, neither claim has any merit and each must be dismissed.

### 1.    *First Amendment Claim*

The plaintiff's contention that his right to freedom of association has been violated by the Coast Guard's alleged requirement that all pilots who seek to work in District One must join the SLSPA is weak, at best.  Pl.'s Compl. at 11; Pl.'s Br. in Opp'n at 12-21.

Defendant Gilmour's letter stating that the plaintiff is "free to apply to the SLSPA" and/or "free to apply to other pilotage associations" comports with existing law that *allows* for independent pilots, but places the *primary responsibility* of providing pilotage service on the established pools.  Defs.'s Mot. to Dismiss at 16-18; Defs.'s Reply at 7-10.  Simply stated, defendants do not *require* the plaintiff to join the SLSPA as a condition to employment.  Indeed, defendants themselves authorized plaintiff to act as an independent pilot during the 2001 through 2003 navigation seasons due to the Director's determination that the SLSPA was not providing adequate pilotage services.  In fact, the Director of Great Lakes pilotage rejected the SLSPA's argument that only pilots belonging to an authorized pool could provide services, and that even though plaintiff had resigned from

---

[3]    Preliminarily, the Court notes that these constitutional claims are properly before the Court even though the Court lacks subject matter jurisdiction over the APA claims.  While the Supreme Court has never expressly decided whether Congress may bar judicial review of constitutional claims, it has noted that such action would raise a "serious constitutional question of the validity of the statute as so construed."  *Weinberger v. Salfi*, 422 U.S. 749, 762 (1975).  Moreover, the Supreme Court has indicated that there must be a "clear expression" of Congressional intent to preclude judicial review of colorable constitutional claims.  *Lincoln v. Vigil*, 508 U.S. 182, 195 (1993).  The APA contemplates, in the absence of clear expression of contrary Congressional intent, that judicial review be available for colorable constitutional claims.  *Id.*

the SLSPA, he was neither prevented from being dispatched nor did it provide the Coast Guard with any basis to deny the plaintiff the ability to earn his livelihood as a U.S. registered pilot. A.R. at 63. The only prerequisite to the plaintiff's employment was the Director's determination, pursuant to his statutory authority under 46 C.F.R. § 401.720, that the SLSPA was not providing adequate service and, thus, the plaintiff or another U.S. registered pilot was needed to provide pilotage service in the emergency interim situation. Accordingly, plaintiff has failed to state a claim under the First Amendment to the U.S. Constitution and this Count must be dismissed.

## 2.   *Fifth Amendment Claim*

Additionally, the plaintiff asserts that his Fifth Amendment rights have been violated by the Coast Guard's denial of his independent pilot status beginning with the 2004 navigation season. Pl.'s Compl. at 12; Pl.'s Br. in Opp'n. at 21-26. I disagree. The Fifth Amendment to the Constitution states that "no person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. A reviewing court can only determine "what process is due," when a plaintiff first demonstrates that a substantive right has been deprived and the Due Process Clause applies. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (quoting *Morrissey v. Brewers*, 408 U.S. 471, 481 (1972)). A property or liberty interest in continued employment can be derived from "statutes, regulations, ordinances, or existing rules or understandings . . . that secure certain benefits and that support claims of entitlement to those benefits." *Doe v. Gates*, 981 F.2d 1316, 1320 (D.C. Cir. 1993) (quoting *Bd. of Regents*, 408 U.S. at 577). However, the plaintiff must first have a "legitimate claim of entitlement" to the benefit

10

rather than merely a "unilateral expectation," "abstract need" or "desire." *Bd. Of Regents*, 408 U.S. at 576. Plaintiff Menkes has no such claim here.

In this case, the pertinent statutes themselves do not expressly create an entitlement to the authorization of working as an independent pilot in a district with an approved pilotage pool. Indeed, the statute and the agency's interpretation of the statute caution against any reliance upon working as an independent pilot by reiterating that the Director must first determine that "extraordinary circumstances" exist rendering independent pilots necessary. A.R. at 1-2. Thus, the statute does not "secure" the benefit nor "support" the plaintiff's entitlement to independent pilot status. *Gates*, 981 F.2d at 1320 (holding that the National Security Act of 1947 expressly conferred discretion to the Director to terminate the employment of any employee of the Agency whenever "he shall deem such termination necessary or advisable in the interests of the United States" and thus, did not create a property interest). Accordingly, the plaintiff has failed to state a claim under the Fifth Amendment and this claim must likewise be dismissed.

## CONCLUSION

For the above reasons, the defendants' motion to dismiss is GRANTED. An appropriate Order will issue with this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge